UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

KEVIN DEAN,

          Petitioner,                    MEMORANDUM & ORDER

            - against -

                                      05-CV-1496 (DGT)
UNITED STATES,

          Respondent.
-------------------------------------------------------- x

TRAGER, J.

On August 31, 2005, petitioner Kevin Dean's habeas corpus petition was dismissed and converted into a petition for a writ of coram nobis. Dean v. United States, No. 05-1496, 2005 WL 2129153 (E.D.N.Y. Sept. 1, 2005). The government was directed to submit the form upon which plaintiff allegedly pled guilty to a charge of public lewdness. Id. The government has been unable to locate the requested documents, but has attempted to comply with the order by submitting the "Violation Notice" form used by the United States Park Police at the time of Dean's arrest. The government has also filed a motion for reconsideration, arguing that the doctrine of coram nobis does not apply and that the case should be dismissed.

**Background**

Dean's petition relates to a February 12, 1992 arrest and charge of public lewdness. (Def.'s Mem. of Law in Supp. of its

1

Mot. for Recons. ("Def.'s Mem.") Ex. 5.) Dean was arrested at Gerritsen Inlet by a plainclothes park police officer for public lewdness under 36 C.F.R. § 7.29(c). Id. The officer issued Dean a Violation Notice and released him. Id.

Dean does not challenge this arrest, but argues that his subsequent payment of a fine resulted in an invalid conviction. Id. Dean says that the arresting officer advised him not to contact a lawyer, but to pay a fine, after which the case would "fall off [his] record in a few years and no one would know about this little incident." (Dean's Aff. in Supp. of Mot., Oct. 25, 2004 ("Dean Aff. Oct. 2004").)

The officer's comments and a Violation Notice were the only warnings to Dean from the government on the results of paying the fine. The original copy of the Violation Notice may have had a description of Dean's alleged crime on its first page, but the government claims that it does not have a copy of the exact notice it gave to Dean. (Decl. of AUSA Steven M. Warshawsky ("Warshawsky Decl.").) However, as noted above, it has provided a copy of the last page of the type of Violation Notice that was "most likely" the form used by the United States Park Police at the time of his arrest. Id. This Violation Notice has instructions for both mandatory and optional appearances depending on which box is marked. (Warshawsky Decl., Ex. A. ("1992 Violation Notice").) Since Dean was allowed to pay the

fine, presumably his appearance was optional.

The directions for optional appearances in the form provided by the government state that the person to whom the ticket was issued must either:

> 1. PAY THE COLLATERAL AMOUNT SPECIFIED.  If you wish to dispose of your case WITHOUT HAVING TO APPEAR IN COURT, mail your personal check or money order in this envelope within 7 days for the amount of the collateral specified. ...
> Payment of the collateral ("fine") will signify to the court that you do not contest the charge nor request a court hearing. ...  or
> 2. APPEAR IN COURT. . . .

Id. (emphasis in the original).  Dean chose the first option and paid the fine rather than appearing in court.

The government has also submitted the Violation Notice that is currently in use by the United States Park Service in this district.  ("Violation Notice," attached to Letter from Steven Warshawsky to the Court of 12/14/2005 ("current Violation Notice".))  Unlike the version in use when Dean paid the fine, this current version of the Violation Notice has been modified to give some warning of what may occur upon payment of the fine: "In some federal jurisdictions, payment of the total collateral due constitutes a plea of guilty or nolo contendere."  Id.  This version of the notice includes an additional form for the officer to fill out explaining the type of offense and a description of it.  Id.  No similar form was included in with the 1992 Violation Notice.

In its initial brief for the reconsideration motion, the

government claimed that there was also no record that Dean paid the fine. (Def.'s Mem. at 5.)  After Dean provided a copy of a letter from the Department of Interior indicating the fine was paid (Pls.' Opp'n, Ex. A), the government acknowledged that the Central Violations Bureau ("CVB") has maintained a record of the payment of a fine of $80 on February 26, 1992 for violation no. P513549 (Def.'s Reply Mem. in Supp. of its Mot. for Recons. at 2 ("Def.'s Reply")).

This record of the fine and the possibility of a conviction on Dean's record emerged again more than ten years after the 1992 arrest.  In December 2003, his employer, the State of New Jersey, hired a private agency to do a background check of his fingerprints. (Dean Aff. Oct. 2004.)  At the time, Dean had been working for the State of New Jersey as a school bus driver for seventeen years.  Id.  The private agency found the record of his arrest, and Dean informed the agency that he paid a fine to resolve the matter.  Id.  The private agency in turn told him that by paying the fine he pled guilty to the charge.  Id.

After the background agency reported the arrest and payment of the fine to his employer, his employer also treated the arrest and payment as a guilty plea and conviction. (Pls.' Statement in Opp'n to Defs.' Mot for Recons. ("Pls.' Opp'n"), Ex. B.)  Dean was disqualified from his employment as a school bus driver.  Id.  In response to his appeal to the state board of education, the

state informed him by letter that the law did not allow for a waiver or appeal other than on matters of pure law and that his only other available recourse was to challenge the accuracy of his criminal record. Id. He was further informed that if the record were found to be in error, he could continue the appeal; and if it were expunged, he could reapply for his former job as a new applicant. Id. Dean relies on this coram nobis petition as his only method to either find the conviction in error or expunge his record.

## Discussion

### (1)

The writ of coram nobis provides an opportunity to challenge invalid convictions after the sentence has already been served, but "the results of the conviction still persist." United States v. Morgan, 346 U.S. 502, 512-13 (1954). In order to obtain coram nobis relief, the petitioner must establish that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (quoting Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996)). As decided in the earlier opinion, Dean clearly meets this burden.

Dean, 2005 WL 2129153, at *2.

Dean has demonstrated evidence of the first factor: "compelling circumstances." The record – in the form of the 1992 Violation Notice – established that Dean was in no way informed what legal consequences he would suffer if he paid the fine. The 1992 Violation Notice does not explain that there was the potential for a conviction to remain on his record permanently. Furthermore, Dean alleges that the officer at the scene recommended that Dean not speak with an attorney and told him that the record would be expunged after the passage of time. However, after the discovery by the private agency some eleven years after his arrest, Dean lost his job because his employer considered the payment an indicator of a conviction. Given these facts, Dean has demonstrated the required "compelling circumstances."

These same circumstances fulfill the second requirement that Dean demonstrate "sound reasons" for his delay. Dean has worked at the same job for seventeen years and without the issue of the 1992 arrest ever having been raised by his employer. This conformed with the arresting officer's statement that payment of the fine would not cause problems later. This circumstance certainly constitutes a "sound reason" for his delay in filing this petition.

Dean also meets the third requirement for coram nobis

because he continues to suffer from legal consequences of the conviction. The government argues that the New Jersey bus driver statute, N.J. Stat. Ann. § 18A:39-19.1(a), does not disqualify school bus drivers based on convictions of public lewdness. A cursory review of that law indicates that the government's assertion is incorrect. The statute disqualifies people convicted of offenses under chapter 14 of the Title 2C of the New Jersey Statutes. Id. New Jersey's prohibition against public lewdness falls within that chapter. See N.J. Stat. Ann. § 2C:14-4.

Although Dean was charged with a federal, rather than a state crime, violation of the federal public lewdness regulation likely also triggers the New Jersey bus driver statute. Under New Jersey law, when the relevant conviction is under a federal statute, the conviction bars state employment in schools if the statute is "similar" to one of the listed New Jersey statutes and for a "substantially equivalent crime or offense." N.J. Stat. Ann. § 18A:39-19.1(a). Therefore, despite the government's argument to the contrary, there seems to be a strong possibility that the statutes are sufficiently similar. Moreover, generally, it is not the role of a federal district court to tell state officials that they have misinterpreted state law.

The records of Dean's petition to the Commissioner of Education in New Jersey indicate that Dean did not challenge as a

matter of law whether the federal regulation, 36 C.F.R. § 7.29(c), would trigger the New Jersey disqualification requirement. (Pls.' Opp'n, Ex. B.)  However, regardless of any possible future decision of the administrative board on this point, it also recommended that he seek to remove the conviction from his record.  If the record were expunged, he could reapply for his former position as a school bus driver; if it were found in error, he could continue his appeal to the state board.  Therefore, he currently continues to suffer legal consequences from his record.

Petitioner thus meets the three-part test for coram nobis set out in <u>Foont</u>.  Furthermore, a district court has equity jurisdiction to correct erroneous criminal records even if the writ of coram nobis did not lie.  <u>Doe v. Immigration and Customs Enforcement</u>, No. M-54, 2004 WL 1469464, at *5-6 (S.D.N.Y. June 29, 2004) (citing <u>United States v. Schnitzer</u>, 567 F.2d 536, 539 (2d Cir. 1977)).

**(2)**

The government's first argument is that payment of the fine constituted a guilty plea.  However, to be a valid guilty plea, Dean must have made a knowing waiver of his rights.  <u>United States v. Andrades</u>, 169 F.3d 131, 132 (1999).  In order to determine whether there is a conviction, the notice afforded to

8

Dean must be considered. The nature of this notice is determined, in part, by the crime of which he was accused.

Dean's ticket was for a violation under 36 C.F.R. § 7.29(c), a National Park regulation. The highest penalty allowed for violations of a National Park Service regulation is imprisonment not exceeding six months or a fine of $500 and costs. 36 C.F.R. § 1.3; 16 U.S.C. § 462. Based on this potential penalty, the highest classification of these crimes under federal law is a Class B misdemeanor. 18 U.S.C. § 3581(b); 18 U.S.C. § 3559(a). Class B misdemeanors are defined as petty offenses. 18 U.S.C. § 19. Pleas to class B misdemeanors are governed by Rule 58 of the Rules of Criminal Procedure.

Rule 58 allows the court to "accept a fixed-sum payment in lieu of the defendant's appearance and end the case" if this procedure is allowed by the local rules. Fed. R. Crim. P. 58 (d)(1). The local rules for this court do allow for such forfeiture for charges under regulations promulgated by United States agencies. Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York 58.2(a) ("A person who is charged with a petty offense . . . or violating any regulation promulgated by any department or agency of the United States government may, in lieu of appearance, post collateral in the amount indicated in the summons or other accusatory instrument, waive appearance before a United States magistrate judge, and

consent to forfeiture of collateral."). However, other than the language "end the case" in the federal rule, neither rule gives any indication of whether this "end" indicates a criminal conviction or the payment of a civil fine.

Some district courts, relying on local rules that specifically indicate that payment of the fine results in a guilty plea, have held payment of such fines to be a conviction. See <u>Scharf v. United States</u>, 606 F. Supp. 379 (E.D. Va. 1985); <u>United States v. Porter</u>, 513 F. Supp. 245 (M.D. Tenn. 1981). As there is no similar language in the local rules for the Eastern District, these cases are not persuasive here.

In addition to the absence of language in the rule as to whether the collateral forfeiture would result in a conviction, the history of the rule indicates that collateral forfeiture may not be appropriate for the type of crime of which Dean was accused. The Rules of Procedure for the Trial of Misdemeanors before United States Magistrates were incorporated into and are nearly identical to the current Rule 58.[1] The committee notes to these rules discuss the limitations of collateral forfeiture. R. of Pro. for the Tr. of Misdemeanors R. 4 advisory committee's notes (effective June 1, 1980, repealed 1990). In the last

---

[1] The advisory committee notes from 1990 (the year that the Rules of Procedure for the Trail of Misdemeanors were incorporated into Rule 58) to present note that all changes are "only technical in nature and no substantive change is intended." Fed. R. Crim. P. 58 advisory committee's note (1990).

10

change prior to its incorporation into Rule 58, the rule was expanded to include misdemeanors rather than only petty offenses. Id. In making this change, the committee "emphasized . . . that the aforementioned change in the rule is limited in nature; it is intended to apply only to misdemeanors of the malum prohibitum variety." Id. Furthermore, the committee noted that collateral forfeiture was appropriate for "traffic offenses and similar infractions." Id.

Dean's alleged petty offense technically falls within Rule 58. However, the rule's original focus on traffic violations and other malum prohibitum offenses suggests the procedure was to be used only in the most straightforward of cases, rather than one with the complicated facts and law of a public lewdness charge. The public lewdness statute has been construed narrowly by state and federal courts and had Dean gone to trial, he may well have succeeded. One court in this district has noted that "[m]asturbating in a public place in the presence of another person who has not invited or consented to such behavior ... does not necessarily violate the statute." United States v. Paine, No. 96-cr-14, 1997 WL 1048903, at *3 (E.D.N.Y. Feb. 3, 1997) (reversing a conviction under the public lewdness statute where the defendant purposely exposed himself to an undercover police officer at a location objectively private in terms of casual observation). Considering the legal complexity of the charge,

the possibility of his success and the original purpose of the rule, the collateral forfeiture procedure was not appropriate in this instance.

Moreover, the Violation Notice and the ticket in use at the time of petitioner's "plea" neither provided the information required for the waiver of the petitioner's constitutional rights, nor informed him he was subject to a conviction.  In particular, there is no evidence that he was made aware of the nature of the crime of which he was accused.  A violation of public lewdness under this regulation adopts the definition under the New York Penal Code.  The statute states: "[a] person is guilty of public lewdness when he intentionally exposes the private and intimate parts of his body in a lewd manner or commits any other lewd act [ ] in a public place."  36 C.F.R. § 7.29.  The Violation Notice provided by the government does not indicate that Dean was provided this definition or any other reference to the relevant law.

Indeed, perhaps intentionally, the word "guilty" did not appear on the face of the Violation Notice.  The strongest indication of any legal consequences of paying the fine on the Violation Notice was the statement: "Payment of the collateral ('fine') will signify to the court that <u>you do not contest the charge</u> nor request a court hearing."  (1992 Violation Notice (emphasis added).)  Again, this language does not explain the

nature of the offense, the maximum penalties, or the rights Dean was waiving. There is no indication at all that payment could result in a criminal conviction and a permanent blot on his record.

The acceptance of both guilt and a permanent record of a conviction is a serious decision. At a minimum, Dean should have been advised when he was deciding whether to pay the "COLLATERAL AMOUNT" or "fine" that payment constituted a guilty plea and he was thereby accepting a federal conviction on his permanent record. The Violation Notice in use at the time gave no warning that payment of the fine would have such a result. Without such a warning, Dean cannot have made a knowing waiver of his rights. <u>Andrades</u>, 169 F.3d at 132. Assuming that one accepts the government's argument that his payment of the fine constituted a conviction, then the conviction must be set aside as violative of the basic due process right of fair notice. A person given a Violation Notice which in fact gives no notice of the conviction would have no reason or incentive to consult counsel or inquire about collateral consequences of paying the fine.

(3)

Next, the government offers a directly contradictory description of Dean's situation. Contrary to its first argument that the payment of the fine constitutes a plea of guilty, here

13

it argues that Dean should not receive relief under coram nobis because he has not identified a record of conviction. It maintains that there is no record of a conviction because there is no such statement in the National Crime Information Center ("NCIC") database. (Def.'s Reply at 3.) However, it acknowledges both that the NCIC has a record of Dean's arrest for public lewdness on February 17, 1992, and that CVB has a record of Dean's payment of a fine of $80 on February 26, 1992 for violation no. P513549. Id. Notwithstanding the government's protestations, the combination of this arrest and the subsequent payment is clearly the subject of Dean's petition and is the cause of his present difficulties. Moreover, despite its alternative argument, the government does not offer to note in the NCIC record that the arrest and payment of the fine did not constitute a conviction. Together these arguments have a Catch-22 aspect to them in which the petitioner is both the subject of a conviction, yet is unable to expunge it because the NCIC record is not a record of a conviction.

The government also claims that "allowing a litigant to challenge a petty offense conviction that was achieved pursuant to the procedures outlined in Rule 58 would potentially call into question every petty offense and misdemeanor that has been handled under Rule 58's procedures for permitting defendants to pay a fine in lieu of appearing in court." (Def.'s Reply at 6.)

14

The dire consequences envisioned by the government seem somewhat overblown. Treating these prior Notices of Violations as a non-conviction would impose no burden on the government that the court can envision. For example, convictions for petty offenses such as these cannot be used to impeach witnesses. Fed. R. Evid. 609(a)(1). While possible, it seems unlikely such convictions would be used for criminal history calculation in sentencing. Furthermore, as the government does not seem to have maintained accurate records of what it deems to be convictions, it is difficult to see how they could be used to the government's advantage.

In the future, the government can easily alter the notice form to give clear notice that by paying the collateral amount the recipient is subject to having a Class B misdemeanor conviction on his or her permanent record and that he or she may want to consult counsel. Alternately, they can treat the procedure as a civil forfeiture rather than a conviction. Either alternative would be acceptable, but the present gaming of Rule 58 is not. It appears that the government – and perhaps the courts are complicit – wants to have the "benefit" of a criminal conviction for this large number of petty offenses, without the burden of providing appropriate procedural protection.

Moreover, considering collateral forfeiture as a civil penalty is in line with a shift at the state level where states

15

have made the payment of tickets a mere civil penalty rather than a conviction.  See Van Harken v. City of Chicago, 103 F.3d 1346, 1350 (7th Cir. 1997) (noting states' shift from criminal to civil models for minor violations).  The process required in civil proceedings is less rigorous than that for criminal proceedings and may have been satisfied here.  See Van Harken, 103 F.3d at 1353 (finding no due process violation where parking tickets were converted from criminal to civil violations and the amount of process was reduced to reflect the change).  But if the collateral forfeiture is to be considered a criminal penalty, the Violation Notice should forthrightly so state; if it is a civil penalty that information should appear on the NCIC record.

Neither the Violation Notice in use at the time nor the current Violation Notice provides for an informed notice of a criminal conviction or waiver of rights.  Moreover, the title of the document itself – Violation Notice – indicates it is notifying the recipient of a possible violation; it does not even purport to reference, let alone be a notification of a possible criminal conviction.  It is true that the current version of the Violation Notice has been modified to reflect that some jurisdictions consider payment to be a plea of guilty or nolo contendere.  (Current Violation Notice) ("In some federal jurisdictions, payment of the total collateral due constitutes a plea of guilty or nolo contendere.").  This note, warning only

that the collateral payment constitutes the possibility of a plea of guilty, without setting forth the position of this district, is certainly not sufficient for an informed notice or waiver of rights.

Furthermore, if the government chooses to treat these collateral forfeitures as criminal convictions rather than civil forfeitures, the individual must be informed of that fact. In order to satisfy constitutional concerns, in some way the individual must be given clear notice that payment of the fine constitutes a guilty plea resulting in a conviction of a petty federal offense and be informed of the right to retain counsel. The latter is especially important, as illustrated by this case, to those whose jobs (or immigration status) may be adversely affected by a conviction for even a petty offense. The fact that these are collateral consequences about which the court is not required to inform the defendant makes the need to consult counsel imperative for many of these defendants. The current warning, buried on the back of page three, is insufficient. This warning indicates that a conviction is merely possible, not certain, and is clearly not sufficient to inform the recipient that he or she will in fact have a criminal record.

**(4)**

In this case, although Dean is not subject to any conviction, the resolution of his 1992 arrest on his record is still not clear. There is an "extremely stringent" standard applied to orders to change arrest and conviction records. Doe, 2004 WL 1469464, at *5-6 (quoting Schnitzer, 567 F.2d at 539) (internal quotation marks omitted). However, this standard is based on the government's need to maintain proper records. Id. In this case, the government has admitted confusion regarding the records of the resolution of Dean's 1992 arrest. Since there was, according to the government's alternative view, in fact no conviction, or in the court's view, more accurately, no valid conviction, it is in line with public policy to correct the record to indicate the actual resolution of Dean's arrest. The government is, therefore, directed to add to Dean's NCIC record a clarification reflecting that he was not convicted of a crime. See Doe, 2004 WL 1469464 at *5 (noting that the AUSA in the case in coordination with the agency "caused new information to be added [to] Doe's criminal record" in order to clarify misconceptions about his criminal record).

## Conclusion

Since plaintiff's 1992 arrest and payment of the fine did not constitute a valid criminal conviction, coram nobis relief is, therefore, granted. In addition, the government is directed to complete Dean's NCIC record to indicate that no conviction resulted from his 1992 arrest and payment of the fine. The Clerk of the Court is directed to close the case.

Dated: Brooklyn, New York
      February 27, 2006

SO ORDERED:

_/s/_____
David G. Trager
United States District Judge