```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
KEVIN DEAN

        Petitioner,                     MEMORANDUM AND ORDER

    -against-                           Civil Action No.
                                        CV-05-1496 (DGT)
UNITED STATES OF AMERICA

        Respondent.

--------------------------------X
```

Trager, J:

The government has filed a motion for reconsideration of the grant of Kevin Dean's coram nobis petition.

Dean initially petitioned for an expungement of the record of his fingerprints on October 25, 2004. This motion was denied on November 8, 2004. <u>Dean v. United States</u>, No. 04-mc-00299 (E.D.N.Y. Nov. 8, 2004).

Dean's second motion was filed on March 23, 2005 pursuant to 28 U.S.C. § 2255 to have his conviction set aside. On September 1, 2005, the petition was denied and converted into a petition for coram nobis. <u>Dean v. United States</u>, 05-cv-1496, 2005 WL 2129153 (E.D.N.Y. Sept. 1, 2005). In the same order, the government was directed to submit the form upon which the petitioner pled guilty. <u>Id.</u> The government failed to provide any such form, displaying lack of due diligence that is to be contrasted with the petitioner's counsel, who was able to retrieve the form and submitted it to the court. Nonetheless,

having failed to submit any form, the government filed its first motion for reconsideration regarding the application of the coram nobis doctrine and requested limited discovery. On February 27, 2006, petitioner's petition for coram nobis was granted, implicitly denying the discovery request. Dean v. United States, 418 F. Supp. 2d 149 (E.D.N.Y. 2006).

## Discussion

### (1)

The government has filed this motion for reconsideration. In this motion the government argues that petitioner's claim is precluded by the prior suit for fingerprint expungement. The government has again requested the opportunity for discovery, a summary judgment briefing and an evidentiary hearing on the elements of the coram nobis doctrine. Finally, the government has again questioned whether Dean suffers from any conviction at all. Each argument is addressed below.

### (2)

### Preclusion

The government has raised for the first time in this motion the argument that Dean's record cannot be expunged because of the res judicata, or claim preclusion, effect of the October 25, 2004 order denying petitioner's motion to expunge the record of his

fingerprints.  Not only has it waived the affirmative defense by failing to raise it previously, O'Conner v. Pierson, 426 F.3d 187 (2d Cir. 2005) (finding claim preclusion an affirmative defense which is waived if not raised), it is now precluded from raising this new issue on a reconsideration motion.  Cunnif v. Dep't of Treasury, 05-3399 (ENV), 2006 WL 930842 (E.D.N.Y. Apr. 11, 2006) (denying motion for reconsideration where movant failed to "demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion") (internal quotation and citation omitted).

Even if the court were prepared to ignore the waiver, the preclusion argument is without merit.  A motion to expunge and a § 2255 motion or coram nobis claim are treated differently under the court's procedures.  An application to expunge is filed as a miscellaneous proceeding while a § 2255 is filed as a civil action with a different caption.  Although the court probably would not have required Dean to pay, the court does require different fees for miscellaneous cases ($35), than for § 2255 cases ($5).  See Deficit Reduction Act of 2005, Pub. L. 109-171 (2005).

More importantly, although the government characterizes its argument as res judicata, the government's argument appears to be based on collateral estoppel or issue preclusion because it claims that the particular issue of expungement of Dean's

3

fingerprints has already been litigated, thus precluding the expungement of Dean's conviction record. However, the doctrine cannot apply because a claim for expungement of the record of his fingerprints is not the same as one for the correction of an erroneous record of a conviction. The factors and policies weighed in expunging an accurate arrest or fingerprint record and in correcting an erroneous record of conviction present different considerations.

The expungement of accurate arrest records is only allowed in "extreme cases" because of the government's interest in maintaining accurate records to promote effective law enforcement. <u>Unted States v. Schnitzer</u>, 567 F.2d 536, 539 (2d Cir. 1977); <u>see</u> 28 U.S.C. § 534(a) (2005) (directing the attorney general to collect and maintain criminal records). "Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, where the court determined the sole purpose of the arrests was to harass civil rights workers, where the police misused the police records to the detriment of the defendant, or where the arrest was proper but was based on a statute later declared unconstitutional." <u>Schnitzer</u>, 567 F.2d at 539 (internal citations omitted). Because these circumstances were not present, and because potential harm to employment has been found not to be an "extreme circumstance," Dean's initial

4

petition to expunge the accurate record of his arrest and fingerprints was denied. Dean v. United States, No. 04-mc-00299 (E.D.N.Y. Nov. 8, 2004); (citing United States v. Hasan, No. 98-cr-786 (ILG), 2002 WL 31946712 (E.D.N.Y. Dec. 4, 2002)).

Dean's second request, to correct the erroneous record of a conviction, does not trigger the same concern about the negative consequences of loss of important information if accurate criminal records are expunged. Here, rather than seeking to remove an accurate record from law enforcement officials, Dean seeks to ensure the record contains accurate information: that he has not been convicted of public lewdness. No information is lost to law enforcement officials by granting his request. Rather it assures that they have correct information on which to proceed. This new request improves upon, rather than diminishes, law enforcement's effectiveness. Thus, the rationale for requiring an "extreme circumstance" does not exist. All that is being sought is the correction of an inaccurate or ambiguous record. Dean, 418 F. Supp. 2d at 157. Many cases have stated that the courts have the equitable power to correct the "inaccuracy of records." See Doe v. Immigration and Customs Enforcement, No. M-54, 2004 WL 1469464, at *5-6 (S.D.N.Y. June 29, 2004); Doe v. United States, 964 F. Supp. 1429 (S.D.Cal. 1997); accord United States v. McFadzean, 93-cr-25 (CSH), 1999 WL 993641 (S.D.N.Y. 1999); United States v. Sherman, 782 F. Supp.

866 (S.D.N.Y. 1991); Chastain v. Kelley, 510 F.2d 1232 (D.C. Cir. 1975). Given the absence here of policy concerns that exist when expungement is sought and considering the different evidence involved when correction of the conviction records is sought (i.e., inaccuracy), Dean's request for expungement for fingerprints cannot preclude his later request to correct an erroneous criminal record.

**(3)**

**Discovery on Coram Nobis**

The government argues that it needs discovery on all three elements of coram nobis. The three requirements are: (1) continuing legal consequences from the conviction, (2) making the petition without undue delay, and (3) compelling reasons for granting relief. Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998). Each of the government's arguments are addressed below.

**a. Continuing Legal Consequences**

The government has challenged the application of coram nobis, claiming that Dean does not "continue[] to suffer legal consequences from his conviction." Fleming, 146 F.3d at 89-90. The government argues that economic hardship is not sufficient and that Dean may not have even been terminated based on the

6

record of the conviction.

It is clear, however, that Dean's conviction disqualifies him from a category of jobs, including the position he held for twelve years. The conviction for public lewdness clearly falls within the New Jersey statute which disqualifies people from driving school buses if they have been convicted of certain offenses including sex offenses. N.J. Stat. Ann. §§ 18A:39-19.1(a); 2C:14-4. Letters from the New Jersey Department of Education confirm that he was terminated on the basis of this statute and state that he will be eligible to reapply for his former position if he successfully challenges his conviction.

These facts are in sharp contrast to Fleming v. United States, 146 F.3d 88 (2d Cir. 1998), which is relied on by the government. In Fleming, the petitioner showed he was excluded from a category of securities positions, but never alleged that he held, wished to hold, or was qualified for such a position. 146 F.3d at 91. Dean, on the other hand, has been labeled a sex offender and terminated from his work of twelve years. His case has clear civil consequences, in line with the various justifications for the grant of a coram nobis application. See Kyle v. United States, 288 F.2d 440, 441 (2d Cir. 1961) (applying coram nobis where petitioner faced disenfranchisement); United States v. Travers, 514 F.2d 1171 (2d Cir. 1974) (applying coram nobis to federal felony convictions due to civil consequences).

The evidence of Dean's loss of his employment because of the prior conviction was not seriously contested in the government's earlier papers. There is no justification for discovery on this issue.

**b.    Discovery on Undue Delay in Filing the Petition**

The government's next point may be its best. It argues that it wishes to depose the plaintiff on the question of whether he was aware of the conviction during the time between 1992 and 2004. If he was, it could show that he was unreasonable in his delay of bringing the petition. Fleming, 146 F.3d at 89-90 (requiring "sound reasons . . . for failure to seek appropriate earlier relief").

This may be the government's only tenable argument. But, of course, this ignores Dean's claim that he was told by the arresting officer that the entire matter would disappear if he merely paid the fine. More relevant, concededly, Dean was aware of his arrest and the subsequent payment of the fine. However, even if he were aware that the fine amounted to a conviction, he was not aware of its collateral civil consequences. The government's reliance on Foont v. United States, 93 F.3d 76 (2d Cir. 1996), and Nicks v. United States, 955 F.2d 161, 163 (2d Cir. 1992), is unpersuasive, because in both of these cases the petitioners had actually given guilty pleas before a district

judge and been counseled on the legal effect of their actions. Here Dean never appeared before a magistrate or district judge. While it is true that even had Dean gone before a judge he would not necessarily have had to have been informed of possible civil consequences, it is not unreasonable to assume that in an appearance before a judge to plead to a criminal offense and with the judge informing him of his right to consult counsel, Dean would have had impressed upon him the seriousness of the situation and the possible wisdom of seeking counsel. What in fact occurred gave the impression that what was involved was little more than a parking ticket violation.

    Petitioner affirms that he filed his claim when he first learned of the civil consequences of having paid the fine – to wit, when he was terminated from his employment. Although the government could argue that he should have known the civil legal effect at the time he paid the fine, its own contradictory arguments – claiming there is no conviction and that Dean does not deserve relief under coram nobis – indicate that his legal status was and is far from certain, even to those who charged him. Nonetheless, it is possible that at some point prior to his termination he learned that there was a record of a conviction still on the public record and that it may have had adverse civil consequences. Accordingly, the government may engage in discovery on this point if it wishes.

**c.   Compelling Reasons for Granting the Writ**

The government has also argued that coram nobis should not apply because there are no "circumstances compelling such action to achieve justice" since petitioner admitted guilt in his initial petition for expungement.  Fleming, 146 F.3d at 89-90. It now asks to further develop the record on this point.  In his initial petition, Dean, acting pro se, pleaded for relief by stating that this was a "one-time offense."  Taken in context the statement was not an admission of guilt, but rather a layman's assurance that he was not a habitual lawbreaker or danger to his community.  More relevant, however, is that the government's contention that actual innocence is a prerequisite for the application of the writ is contrary to settled law.  See Nicks v. United States, 955 F.2d 161 (2d Cir. 1992) (finding that a major constitutional error in taking a guilty plea "may entitle a person to coram nobis relief notwithstanding that the petitioner . . . does not assert actual innocence").

The government's second point on this issue is equally unavailing.  The government challenges whether the arresting officer actually made statements which dissuaded plaintiff from seeking an attorney, noting that he made contradicting claims regarding receiving a Miranda warning.  Dean has consistently stated that he was dissuaded from speaking to an attorney and, more importantly, that he was informed that if he paid the fine,

he would not have a "record."[1]  However, even if Dean contradicted himself on this point under examination, the opinion did not turn on whether he was dissuaded from seeking counsel. The point of the opinion was that Dean was not put on notice that by paying the fine he had pled guilty to a crime.

The government's claims regarding Dean's notice of the crime and his possible success at trial are equally unavailing.  The government notes that Dean stated that the officer accused him of

---

[1] In Dean's initial petition for expungement of his fingerprints he stated:

> During the booking process I was advised of my Miranda Rights.  However I was further advised by the arresting agency that if I wanted to bring my attorney in to [sic] this case it would take much longer and after all, the booking process was really "no big deal". . . .  I was advised to mail a check in the amount of $80 to the address that was provided and that once the fine was paid that "all would fall off my record in a few years" and no one will ever know about this little incident.

Aff. in Supp. of Mot., Oct. 25, 2004.

A later affirmation in documents never filed by Dean with the court, but served on the government who supplied it to the court confirms the same statement:

> Initially, I never actually pled guilty.  I simply paid a fine.  I did this because one of the officers said that the incident would "fall off my record in a few years".  He also said that hiring a lawyer would make the case much longer.

Aff. of Kevin Dean in Sup. of Pl.'s Mot. to Withdraw Guilty Plea, Dec. 14, 2004.

public masturbation.  However, there is no evidence that he was informed of the elements of public lewdness, the crime for which he was charged.  Dean now argues that he did not commit the crime.  In this context, as noted below, the record is barren of any details of whether the crime of public lewdness actually occurred.  See <u>United States v. Paine</u>, No. 96-cr-14, 1997 WL 1048903, at *3 (E.D.N.Y. Feb. 3, 1997) (reversing a conviction under the public lewdness statute where both sides agreed that the defendant purposely exposed himself to an undercover police officer because the exposure occurred at a location objectively private in terms of casual observation).

The criminal system seeks to protect criminal defendants from pleading guilty to crimes that they did not commit. Criminal defendants in felony cases must give an allocution which shows that their acts make them guilty of the crime charged.

> These facts assist in assuring the court that the conduct to which defendant admits constitutes the offense for which he has been charged.  The rule is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.

<u>United States v. Adams</u>, 448 F.3d 492, 499-500 (2d Cir. 2006) (internal quotation and citations omitted) (overturning conviction based on plea during which the defendant only admitted to a marijuana conspiracy rather than the cocaine conspiracy in

the charge).

Petty offenses are not given the same level of procedural protection as felony cases. See Lewis v. United States, 518 U.S. 322, 323 (1996) (noting that no jury trial right exists for petty offenses). However, the criminal procedure rules do protect defendants from making an unknowing guilty plea. In petty offense cases such as this one, the magistrate judge "must not accept a guilty or nolo contendere plea unless satisfied that the defendant understands the nature of the charge and the maximum possible penalty." Fed. R. Crim. P. 58 (c)(1). It is the government's responsibility to put forward evidence that the plea is knowing and voluntary, even absent the requirement of the full Rule 11 colloquy. See Hanson v. Phillips, 442 F.3d 789, 797 (2d Cir. 2006) (granting habeas corpus petition from a state court judgment based on constitutional standards, specifically noting that compliance with Rule 11 is not required of state courts).

In Dean's case, the government has put forward no evidence that Dean knew or was informed of the elements of the crime with which he was charged. Dean never appeared before a magistrate judge. The government's current claim, that Dean knew the acts the police officer alleged, does not satisfy this requirement. Even when all parties have agreed upon what acts have been committed, this agreement does not ensure that the defendant has committed a crime. See Paine, 1997 WL 1048903, at *3. Dean may

13

have known why he was arrested, but this knowledge is not sufficient for a "knowing and voluntary" guilty plea. <u>Hanson</u>, 442 F.3d at 797.

Of course none of this addresses the opinion's alternate and principal argument. Even assuming an acknowledgment of guilt and that he was not dissuaded from speaking to an attorney by the arresting officer, the conviction is ultimately invalid because he was never given notice either by a judge or in writing that by paying the fine he was admitting to the commission of a misdemeanor crime. The contemporaneous Violation Notice did not notify Dean that he was pleading guilty, or that he was subject to a conviction. The government has argued that my first opinion made new law in finding that Dean was entitled to be informed that he was accepting a "permanent conviction on his record" by paying the fine. The proposition is a basic tenet of due process. A guilty plea is only valid if it is "knowing and voluntary." <u>Hanson</u>, 442 F.3d at 797. Whatever an individual may believe, it is hard to conceive that a guilty plea could be knowing and voluntary if the defendant was never informed on the public record that he has pled guilty to a criminal offense.

Because there would still be compelling reasons for granting the writ even if Dean were guilty of the misdemeanor, no discovery is warranted on this issue. The government's motion for discovery is, therefore, denied.

**(4)**

**Clarification of the Record**

While the government continues to oppose Dean's petition for coram nobis, it does not do so on the grounds of mootness; rather it argues that Dean was not convicted of a crime, making his coram nobis petition pointless. Moreover, at the same time that it argues there is no conviction, it refuses to clarify the public record to so indicate. These positions are inconsistent and threaten the government's credibility. If the government continues to hold the position that Dean was not convicted of a charge of public lewdness, then it is unclear how the government would be prejudiced by making this fact clear on Dean's record at the National Crime Information Center ("NCIC"). This is different from a request to expunge the arrest.

It appears that the government would like to maintain the status quo. If the government is correct and Dean does not suffer from an erroneous conviction, then no coram nobis relief is required. Instead Dean suffers from an unjust lack of clarity in his criminal record. However, the government's refusal to correct the record to so indicate is unacceptable.

## Conclusion

The government's request for discovery is granted to the extent indicated. If, following discovery, it wishes to make any further motions, then it should follow the court's individual rules.


Dated: Brooklyn, New York
       June 28, 2006

                                    SO ORDERED:


                                     /s/
                                    David G. Trager
                                    United States District Judge